**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

TAI CHIN PREYOR,
#999494
PETITIONER,

V.

RICK THALER,
DIRECTOR OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,
RESPONDENT.


IN THE MATTER OF
TAI CHIN PREYOR
ON HABEAS CORPUS


CASE NO: SA10CA0857 FB
290th JUDICIAL DISTRICT OF
BEXAR COUNTY SUPERIOR COURT
SAN ANTONIO TEXAS CASE NO: 2004-CR-3602


## FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Law Offices of Brandy Estelle
Brandy Estelle, Esq. (SBN 216240)
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Telephone (310) 300-4043
Facsimile (310) 388-5350

1

## FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS

The applicant, Tai Chin Preyor, through his retained attorney, Brandy Estelle, Esq., hereinafter referred to as "Estelle" is filing this First Amended Petition for Writ of Habeas Corpus under the provisions of 28 U.S.C. §2254, collaterally attacking his capital murder conviction and death sentence in Cause Number 2004-CR-3602 of the 290th Judicial District of Bexar County Superior Court, San Antonio, Texas.

### INTRODUCTION

In February 2004, in San Antonio, Texas, Petitioner Tai Chin Preyor, an indigent African-American man, was arrested and charged with the capital murder of a Caucasian woman, a known high-profile drug dealer.

Texas appointed Caucasian defense counsel to represent Petitioner, but unknown to Petitioner at the time, appointed counsel had a conflict of interest based on the fact that appointed counsel had a friendly relationship with the father of the Caucasian woman Petitioner was accused of murdering.

The matter was tried by a jury and beginning with voir dire, through the guilt phase and penalty phase, Petitioner received ineffective assistance of counsel.

The jury returned a verdict of guilty as to capital murder in the 290th Judicial District of Bexar County Superior Court, San Antonio, Texas on March 14, 2005. Petitioner received the death penalty. Petitioner remains on death row at the Texas prison in Livingston, Texas.

Texas appointed the same trial counsel who rendered ineffective assistance at trial

to represent Petitioner on direct appeal.  Trial counsel who was now appellate counsel had a personal conflict of interest with Petitioner, and Petitioner received ineffective assistance of appellate counsel.

A Notice of Appeal was filed, Cause Number AP-75-119 of the 290th Judicial District of Bexar County Superior Court, San Antonio, Texas and the conviction and death penalty was affirmed on appeal on January 23, 2008.

Texas appointed a different Caucasian defense counsel to represent Petitioner in a state habeas proceeding.  Again, Petitioner received ineffective assistance in the original state habeas proceeding, and the habeas counsel appointed by Texas abandoned Petitioner before Texas denied the initial habeas application on October 28, 2009.

Petitioner's family retained private counsel, Estelle, of Beverly Hills, California, to represent Petitioner, and Estelle filed a Subsequent Habeas Petition on December 21, 2009.  Texas accepted the Subsequent Habeas Petition and the State filed an Answer, but the pleading was not responsive to issues raised in the Subsequent Habeas Petition.  As a result, Estelle filed a Motion to Strike State's Answer as unresponsive on February 23, 2010.  Estelle has made repeated efforts to have Texas rule on Petitioner's Petition, Motion to Strike, and request for evidentiary hearing as to the Subsequent Habeas Petition.

Texas has failed and refused to take any further action regarding the state subsequent habeas proceeding.

Petitioner's federal claim of ineffective assistance of counsel has been fairly

presented to the highest state court, and now Petitioner seeks federal habeas corpus relief, the exhaustion of state remedies required having been satisfied. <u>Piccard v. Connor</u> (1971) 404 US 670, 28 USCA § 2254.

## I.

Petitioner is unlawfully restrained of his liberty and imprisoned by the Director at the Texas Department of Corrections at the Livingston unit of the Texas Department of Corrections.

## II.

Petitioner is imprisoned pursuant to the judgment of conviction rendered on March 14, 2005 by the Bexar County Superior Court, Case No. 2004-CR-3602 in the 290th Judicial District Court, San Antonio, Texas. The judgment was rendered after a jury trial on Petitioner's plea of not guilty.

## III.

On March 14, 2005 a jury found Petitioner guilty of committing murder while in the course of committing and attempting to commit burglary as charged in the Indictment and the punishment was assessed at death.

## IV.

Petitioner was sentenced to death. Petitioner filed a timely Notice of Appeal and the Appeal was denied on January 23, 2008. The date of execution has not been set.

## V.

## BACKGROUND

Petitioner first met two drug dealers, David Pointer, hereinafter referred to as "Pointer," and his girlfriend, Tami Tackett, the decedent, hereinafter referred to as "Tackett," in 2003. Petitioner first bought cocaine from Pointer for resale on the streets of San Antonio, Texas, until Pointer turned the Petitioner onto Tackett, who started selling drugs to Petitioner for resale. Two or three times per week, Petitioner would buy cocaine from Tackett for resale on the streets. First, at Tackett's old address, and then at her new address where the homicide occurred, Petitioner would arrive at Tackett's residence, always with several hundred dollars in cash to give to Tackett in exchange for the cocaine to be resold on the streets by Petitioner. Before the homicide, there had never been any argument, harsh words, or dispute about anything between Tackett and Petitioner. Tackett would even volunteer information about her personal relationships, first with Pointer, then later about her new boyfriend, Jason Garza, hereinafter referred to as "Garza." **Petitioner had no motive to kill or harm Tackett. Petitioner had no reason to want Tackett dead, or out of the drug business, because Petitioner made a lot of money in buying drugs from Tackett for resale on the streets of San Antonio.**

The incident which gave rise to the criminal prosecution of the Petitioner took place in the early morning hours of February 26, 2004, in San Antonio, Bexar County, Texas. Long before either trial counsel was court appointed by Texas, Petitioner was arrested in the courtyard which was in the immediate vicinity of the dwelling unit where

the killing took place.  The defendant immediately told the police that he acted in self

defense.  The arrival of the police was swift, and occurred before the alleged victim

actually expired.  She died lying on the floor near the front entrance of her dwelling unit

and without making any statements.  She had been stabbed, and her throat cut with a

knife.  She was well known as a high profile drug dealer and had some such dealings with

Petitioner, and she and the Petitioner were to meet at her place on the night of the

incident.

At the time of Petitioner's arrest, he was covered with the deceased woman's

blood.  Petitioner immediately told the police he was defending himself because he was

attacked by the 300-pound-plus alleged victim and other(s) who ambushed him after the

door was answered by the decedent and a male companion.  Upon making eye contact

with the alleged victim, she snatched Petitioner's money and money clip and quickly

switched off the lights, making it extremely dark inside the premises.

As per usual, Petitioner had several hundred dollars to buy cocaine from Tackett.

The several hundred dollars were in a money clip, and the money and money clip

snatched from the Petitioner during the incident.  The empty money clip was later found

at the location, and the Petitioner's money gone.

When the lights went out, decedent and her male companion began attacking

Petitioner.  Petitioner feared for his life.  Petitioner was able to pull out a knife and

started to fight back by swinging, striking and cutting.  The fight took place in the area of

the front door as bodies banged into and kicked the front door, and scuffled on the floor. The incident happened in the early morning hours while it was still dark outside.

DNA test results confirmed the fact that the blood on Petitioner's clothing was that of the dead woman. The dead woman was a big, heavy and strong 300-pounder with a reputation of always being armed with a handgun, a reputation that Petitioner had firsthand knowledge of. The male companion (the other attacker) also had a reputation of carrying a gun, and Petitioner had firsthand knowledge of this reputation as well.

The pretrial motion resulted in the suppression of Petitioner's recorded statement, and an unsigned written statement. The signed statement by Petitioner survived the suppression hearing and was admitted into evidence at trial.

Voir dire by trial deputies from the state was conducted by the state in a manner that was fundamentally unfair and inconsistent with fundamental fairness.

State prosecutors, embarked upon a continuous and repetitious course of conduct in the form of lecturing to the prospective jurors, to indoctrinate and brainwash the entire jury to embrace an attitude and belief that the only job the jurors had to do was convict the Petitioner and punish him with the death penalty. The prosecutor also admitted said lecturing by stating, "I know I kind of lectured." This was prejudicial of Constitutional dimensions, prosecutorial misconduct, and set the tone by the state prosecutor that permeated and impacted both the guilt and penalty phases in a manner that is constitutionally impermissible. Without objection from defense counsel and apparent approval of the trial court, the state prosecutors told jurors during voir dire that they were

going to "cheat." During voir dire and after announcing that under the law, they were not to tell them about specific facts about the case, the prosecutors went on to do just that. The prosecutors took specifically related facts of the case and equated the facts of this case with well known murder cases both real and from a well known motion picture "A Time to Kill." Prosecutors told prospective jurors that they would not want to have a convicted child molester babysit their children, to illustrate future danger as to Petitioner. Prosecutors used other examples personalizing prospective jurors, designed to inflame and arouse passion in the prospective jurors. The trial itself was quick and made up only four (4) of the twenty-three (23) reporter's transcripts. Voir dire, by comparison, was exceptionally long and consisted of seventeen (17) of the twenty-four (24) reporter's transcripts.

The alleged victim was a white woman. Petitioner is a black man. Defense counsel asked no questions on voir dire as to racial bias or prejudice. In addition, no questions were asked of prospective jurors about attitudes regarding self defense, illegal drug use or sale, the carrying of guns, etc.

During voir dire, defense counsel made it a point to inform prospective jurors that his defense would consist mainly of cross-examination. There are only four (4) defenses to murder: Alibi, Insanity, Defense of Others and Self defense. Cross-examination is not one of them.

In his opening statement, defense counsel suggested to jurors that Petitioner did nothing, was not responsible for the death of the alleged victim, and that Petitioner was

not even present at the time and location of the killing. Defense counsel presented no alibi witnesses. As a part of the opening statement, defense counsel suggested third party culpability, and identified such person by name, (David Pointer), an ex-boyfriend of the decedent. Defense counsel knew Pointer had nothing to do with the homicide when he made the opening statement.

The Petitioner told his defense counsel the individuals who were present during the incident. He specifically told defense counsel that Pointer was NOT present at the incident long before the trial started.

Reasonable and routine investigation and discovery by defense counsel would have eliminated such third party culpability in that the ex-boyfriend, Pointer, so identified by defense counsel, had an alibi and was called as a witness for the prosecution. There was no history of mental illness of the Petitioner, past or present. DNA test results, arrest reports, the defendant's statements to the police, and independent witnesses placing Petitioner at the location of the killing pointed to only one plausible defense, namely self defense.

Defense counsel made representations to the Petitioner that Petitioner would be called to testify as to self defense and that defense counsel would request that the judge give to the jury self defense instructions.

By not calling Petitioner to testify in his own defense, the jury was deprived of critical and meaningful testimony from a percipient witness as to the entire incident. By not calling the defendant to testify as to self defense, the only plausible defense available

to Petitioner was eliminated. This destroyed all hope of asserting self defense, which was to the prejudice of Petitioner. In not calling Petitioner, under the circumstances of this case, to testify in his own defense, defense counsel deprived Petitioner of a potential meritorious defense that could have reasonably resulted in the jury finding that the killing was excused or justified, and therefore, Petitioner was not guilty and should be acquitted of all criminal charges. Petitioner would have told the jury he was at decedent's place at her invitation to buy drugs from her as usual and not to commit a burglary. Petitioner would have told the jury that he had no motive or reason to kill or to harm Tackett. After hearing from Petitioner, the jury may have convicted Petitioner of a lesser charge and eliminated the death penalty. To abandon or ignore the only plausible defense could not be justified as proper trial tactic or strategy. Petitioner, as a criminal defendant, had the ultimate authority to decide whether he would testify in his own defense. The Petitioner wanted to testify in the guilt phase, and if necessary, in the penalty phase in his capital murder trial, and Petitioner expressly informed both court appointed trial lawyers. Trial counsel would not, and did not, call Petitioner as a witness in either phase.

At the close of the evidence production of the guilt phase, defense counsel in his summation abandoned the third party culpability claim, and without any evidentiary support produced by the defense, requested self defense instructions. The court gave these instructions, and defense counsel argued that the defendant acted in self defense. Self defense instructions include multiple references to "from the Defendant's standpoint at the time" or "reasonable belief of the Defendant," all calling for the defendant's state

of mind, that could only be presented to the trier of fact through the testimony of the defendant himself. It is not reasonably possible to successfully assert the privilege of self defense with the defendant remaining at counsel table and not taking the witness stand.

Trial counsel's conduct in representing Petitioner so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Defense counsel's performance made the trial a farce and a sham. The trial judge should have, on its own motion, declared a mistrial. Except for trial counsel's unprofessional errors, a result more favorable to Petitioner was reasonably probable. The state prosecutor in his summation called the absurdity of the inconsistent positions of defense counsel to the attention of the jury. The flip-flop position of defense counsel was ludicrous.

On the face of the trial record, it is obvious that Petitioner did not receive effective assistance of trial counsel and did not receive a fair trial. What is not on the face of the trial record is one of the reasons why. During the trial and evidence production phase in 2004, while court was in recess, defense counsel was observed fraternizing, laughing, and having a conversation with Mr. Charles Bickenson, who was the father of the alleged murder victim that Preyor was on trial for allegedly murdering. This fraternization, socializing and observation of the interpersonal relationship between defense counsel and the alleged victim's father took place in the attorney conference room, located between the trial courtroom and the hallway.

On the date of the February 9, 2009 hearing, Petitioner learned for the very first

time that defense counsel had a conflict of interest his client, Preyor, because a friendship with a family member of the alleged victim that Preyor was being tried for allegedly murdering. The unqualified duty of loyalty to the client was compromised by the conflict of loyalty to the alleged victim's father.

Appellate counsel did not raise the ineffective assistance of trial counsel issue on appeal or by habeas petition. The reasons are clear, appellate counsel and trial counsel were one and the same, AND appellate counsel had a personal relationship with the alleged victim's father. Appellate counsel compounded the problem and did not render effective assistance on appeal. The errors herein below should have formed the foundational basis for a Petition for Writ of Habeas Corpus on the ground of ineffective assistance of trial counsel.

Under the circumstances of this case there was a wholesale miscarriage of justice.

## VI.

## PETITIONER'S IMPRISONMENT IS UNLAWFUL BECAUSE OF THE

## FOLLOWING GROUNDS, CLAIMS, AND ARGUMENTS:

### A. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

1) Failure to Allow Defendant to Testify at Trial

2) Failure to Investigate and Adequately Prepare for Defense at Trial

3) Failure to Object During State Prosecutor's Lecturing to Prospective Jurors, Use of Brainwashing Tactics Instead of Asking Questions, and Indoctrination of the Prospective Jurors

4) Failure to Conduct any Voir Dire Regarding Racial Bias or Prejudice

5) Knowingly Making False, Inconsistent and Confusing Representations to Jury in Opening Statement and Closing Argument

## B. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON DIRECT APPEAL

1) Failure to Present Ineffectiveness Claim for Failing to Allow Defendant to Testify at Trial

2) Failure to Present Ineffectiveness Claim for Failing to Investigate and Adequately Prepare a Defense at Trial

3) Failure to Present Ineffectiveness Claim for Failing to Object During State Prosecutor's Lecturing to Prospective Jurors, Use of Brainwashing Tactics Instead of Asking Questions, and Indoctrination of the Prospective Jurors

4) Failure to Present Ineffectiveness Claim for Failing to Conduct any Voir Dire Regarding Racial Bias or Prejudice

5) Failure to Present Ineffectiveness Claim for an Absurd Summation to Jury

## C. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON STATE PETITION FOR WRIT OF HABEAS CORPUS

1) Arguing Trial Strategy in the State Writ

2) Failure to Produce Any Evidence at the Evidentiary Hearing

3) Abandoning Client by Failing to Prepare a Proposed Findings of Fact and Conclusions of Law as Ordered By the Court

4) Abandoning Client by Failing to Make a Motion for Appointment of Himself or Other Counsel for Petitioner's Federal Habeas Review

## ANALYSIS

## A. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### 1. Failure to Allow Defendant to Testify at Trial

The 6th and 14th Amendments to the United States Constitution guarantee a

defendant the right to a trial by an impartial jury.  To this end, a reasonable and competent defense lawyer would have placed the defendant on the stand to testify as to matters of self defense, and allowed the jury, in its proper fact-finding function to determine credibility and whether a reasonable doubt had been created by the testimony of the defendant.  In this case, the presentation of self defense evidence was necessary, given that self defense was the only plausible defense, was argued in summation, AND self defense jury instructions were REQUESTED AND GIVEN by the trial judge. However, trial counsel did not call the defendant to testify, nor did he produce any other self defense evidence during the guilt phase of the trial.

Defense counsel did not avert to Petitioner's authority to decide whether he would testify in his own behalf (self defense).  Petitioner was arrested at the scene, and told police that he acted in self defense.  Defense counsel's deficient performance of not allowing the defendant to testify, was so serious that defense counsel was not functioning as the counsel guaranteed by the 6th and 14th Amendments to the United States Constitution.

The jury was deprived of hearing self defense evidence from defendant and hearing his side as to what happened.  There were no independent witnesses.  The only witnesses were the defendant and only one other surviving witness, who was a witness for the prosecution.  Applicant Preyor wanted to testify at trial as to self defense, but was not called by defense counsel.

There is a reasonable likelihood that had Preyor been allowed to testify as to self defense, because he was attacked by two individuals, (the alleged victim and her then boyfriend), and at the alleged victim's home at her invitation, who was expecting him, that a more favorable result could have been achieved, and a death sentence avoided.

Petitioner's arrival time was at the direction of Tackett. Petitioner phoned Tackett two times. The first time Petitioner called, she said she still had company and said to call back later. The second time Petitioner called, he called Tackett from a pay phone on the premises and she said to come on up. This was immediately before Petitioner knocked on the door. Petitioner arrived in his customary or usual, all dark clothing. When the knock on the door was answered by Tackett and Garza, the two of them were dressed in street clothing, and appeared to be under the influence. No words were exchanged by anyone. Petitioner pulled out his money and money clip, which was immediately snatched from him, the lights were turned out, and Petitioner was attacked.

Petitioner parked his vehicle in the property parking lot. However, Petitioner did not place a shotgun or rifle on the bumper of his vehicle. The shotgun, or rifle, that was found by the police, has absolutely no connection to Petitioner, and there is no credible evidence to the contrary. The Petitioner would have testified to all of these facts.

The jury's fact-finding function and ascertainment of the truth would be more reasonably likely if all persons of competence, understanding, who may seem to have some knowledge of facts involved in the case testify at trial. The non-production of such evidence would be fatal to the defendant, as was proven by the trial's outcome. Defense

counsel, by not calling defendant as a witness, as defendant had requested, rendered ineffective assistance of counsel which resulted in prejudice to the defendant and denied Petitioner the right to a fair jury trial.

The deficient performance of not allowing the defendant to testify was so serious that it prejudiced the defense in that defense counsel failed to ensure that the defendant had a fair trial, a trial whose result would be reliable.

Absent counsel's unprofessional error, it is reasonably probable that a more favorable outcome would have occurred.

### 2. Failure to Investigate and Adequately Prepare for Defense at Trial

The 6th and 14th Amendments to the Constitution guarantee a defendant the right to a trial by an impartial jury. To this end, a reasonable and competent defense lawyer would have investigated and adequately prepared for defense at trial. A reasonably competent lawyer would not make false statements or representations to the jury.

Petitioner was arrested at the scene of the killing while the alleged victim was still alive. The alleged victim made no statement. Defendant was covered in the dead woman's blood, which was confirmed by DNA before trial. Petitioner told police that he was attacked by the 300-pound alleged victim and other(s) inside the alleged victim's premises. Petitioner was at the location at the request of the alleged victim and not for the purpose of committing burglary or any harm to the alleged victim. A reasonably competent defense lawyer would not knowingly make false statements or representations in opening statements to the jury. During voir dire, defense counsel told prospective

jurors that the defense would mainly consist of cross-examination. No reasonably competent defense lawyer would make such a statement or representation.

Further, in opening statements, defense counsel told the jury that the Petitioner did not do anything, and was not even at the location at the time of the killing. Defense counsel suggested to the jurors that the killing was done by a third party, Pointer. Pointer had an alibi and testified for the prosecution.

The credibility of the defense was compromised by misrepresentation and inaccurate information given by defense counsel. The jury heard evidence through the police that the defendant said the he was at the location of the killing and that the killing was in self- defense. To suggest that the defendant was not even at the location at the time of the killing and to suggest third party culpability in the face of overwhelming credible evidence to the contrary was a total breach of ethics, a breakdown in the adversarial process and completely inadequate preparation.

Defense counsel's deficient performance, by failing to investigate and adequately prepare for defense at trial by making false statements or representations to the jury, was so serious that defense counsel was not functioning as the counsel guaranteed a criminal defendant by the 6th and 14th Amendments to the United State Constitution.

The deficient performance of failing to investigate and adequately prepare for defense at trial was so serious that it prejudiced the defendant, in that by making false statements or representations in opening statements to the jury, defense counsel failed to ensure that the defense would produce a fair trial, a trial whose result would be reliable.

Absent counsel's unprofessional error, it is reasonably probable that a more favorable outcome would have occurred.

### 3. Failure to Object During State Prosecutor's Lecturing to Prospective Jurors, Use of Brainwashing Tactics Instead of Asking Questions, and Indoctrination of the Prospective Jurors

The purpose of the jury selection process is to formulate and promote the seating of a jury that is fair and impartial. To this end, a reasonable, competent defense lawyer would object to the state's attempt, or effort to indoctrinate, and/or, to inflame the jury causing the trier of fact to be biased and partial toward the state's position. In this case, defense counsel made no objections to the state's attempt to inflame the jury and to be partial toward the state's side of the case, by telling the prospective jurors "they (trial deputies) were going to cheat" during voir dire. The state was not allowed, by law, AND by their own admission, to tell the prospective jurors about the specific facts of this case, yet went on to do so anyway. Without objecting, the state told prospective jurors about horrible murders, telling them they would not choose a convicted child molester to babysit their children, all designed to be bias and partial against the defendant.

State prosecutors during voir dire used examples of hideous murder cases, both real and a well known motion picture, "A Time to Kill", to inflame the jury and to arouse their passion in a manner suggesting that the only job the jury had to do was convict the Petitioner and impose the death penalty.

By not objecting to such prosecutorial misconduct, defense counsel failed to ensure the selection of a fair and impartial jury. As a criminal defendant, Petitioner was extremely prejudiced by not having a fair trial by a fair and impartial jury.

Defense counsel's deficient performance, by not objecting to this kind of prosecutorial misconduct, was so serious that defense counsel was not functioning as the counsel guaranteed a criminal defendant by the 6th and 14th Amendments of the United States Constitution.

This deficient performance, of not objecting by defense counsel, was so serious that it prejudiced the defense in that by failing to object to the subject prosecutorial misconduct, during voir dire, defense counsel failed to ensure that the jury selection process would produce a fair and impartial jury as to give the defendant a fair trial, a trial whose result would be reliable. This failure certainly frustrated the fairness of the trial.

Absent counsel's unprofessional error it is reasonably probable that a more favorable outcome would have occurred.

### 4. Failure to Conduct any Voir Dire Regarding Racial Bias or Prejudice

The 6th and 14th Amendments to the United States Constitution guarantee a defendant the right to a trial by an impartial jury. To this end, a reasonable and competent defense lawyer would have conducted voir dire regarding racial bias or prejudice. This was a capital murder case with a black defendant and the alleged victim was a white female. A reasonably competent defense lawyer would voir dire in the areas of racial bias and prejudice.

Defense counsel asked no such questions on voir dire, and made no requests for the trial judge to so inquire. Such failure was below that standard reasonably to be expected of a competent criminal defense lawyer.

A reasonably competent criminal defense counsel, unencumbered by a conflict of interest between his client and he, would have presented this for colorable claim for appellate review by way of habeas petition. This ground for appellate review was not presented by appellate counsel and Petitioner was prejudiced because, had a reviewing court considered this ground, it is reasonably probable that habeas relief would have been granted.

Consequently, Petitioner did not receive the effective assistance of appellate counsel that he was guaranteed under the 6th and 14th Amendments to the United States Constitution as interpreted by the United States Supreme Court.

The Supreme Court has recognized that the failure to inquire on voir dire about the areas of racial bias and prejudice in a capital murder case completely vitiates the legitimacy of the entire jury selection process, and holds that it is reversible error if the trial court prevents the defense from asking such questions.

Defense counsel's deficient performance of failing to conduct any voir dire regarding racial bias, or prejudice was so serious that defense counsel was not functioning as the counsel guaranteed by the 6th and 14th Amendments to the United States Constitution.

The deficient performance of failing to conduct ANY voir dire regarding racial

bias or prejudice was so serious that it prejudiced the defendant in that defense counsel failed to ensure that the defendant had an impartial jury trial, a trial whose result would be reliable.

Absent counsel's unprofessional error, it is reasonably probable that a more favorable outcome would have resulted.

### 5. Knowingly Making False, Inconsistent and Confusing Representations to Jury in Opening Statement and Closing Argument

The 6th and 14th Amendments to the United States Constitution guarantee a defendant the right to a trial by an impartial jury. To this end, a reasonable and competent defense lawyer would have presented a defense, (in this case given the facts surrounding the defendant's arrest at the location, there is only one plausible defense, self defense) that was reasonable and would have presented evidence to support such defense. A reasonable and competent lawyer would NOT have switched to a defense in summation in which NO evidence was presented to support such a defense.

Defense counsel abandoned the third party culpability position he suggested in the opening statement, and switched to a self defense argument without having produced ANY evidence from the defense during trial to support that self defense argument. The Defendant was not called to testify as to self defense, or to anything for that matter. However, the self defense instructions were requested by defense counsel, and given by the court, and the absurdities of the defense's representation was challenged by the state prosecutors who called the absurdity to the attention of the jury.

The applicant was substantially prejudiced in a federal constitutional manner in that no evidence or testimony was presented at trial as to a defense to a capital murder charge. This is true, despite the fact that defense counsel, at trial, in opening statements, suggested to the jury and to the court that Preyor had and would produce an "alibi" defense. However, at trial, defense counsel requested, and the court gave, self defense instructions to the jury, despite the fact that neither Preyor, nor anyone else was called by defense counsel to put on evidence as to self defense. This is true, despite the fact that, at the time of Preyor's arrest, he immediately told the arresting officers that he acted in self defense. Finally, during summation, or closing argument by defense counsel, the jury and the court were told that Preyor had acted in self defense, which was contrary to what defense counsel had suggested in opening statements two days earlier, that Preyor was not present at the time and location of the killing, had nothing to do with the killing, and that there was third party culpability to the killing. Defense counsel, in opening statements, identified by name, Pointer, ex boyfriend of the alleged victim, with full knowledge that Pointer had nothing to do with the homicide, and testified for the prosecution.

No reasonably competent criminal defense lawyer would suggest the jury the evidence would show third-party culpability in the opening statement without any evidence to back up such a position, and then with a complete turn-around in summation,

argue self defense after having failed to produce any self defense evidence from the testimony of the defendant, or anyone else.

The trial deputy called this absurdity to the attention of the jury, which was a complete and total breakdown of the adversarial process, and the denial of a fair trial. This graphically exposed the lack of credibility of the defense's position.

Defense counsel's deficient performance of abandoning third-party culpability suggested in the opening statement and switching to self defense during closing argument without having produced any evidence to support such an argument to the jury was so serious that defense counsel was not functioning as the counsel guaranteed a defendant by the 6th and 14th Amendments to the United States Constitution.

The deficient performance of abandoning third party culpability presented in the opening statement and switching to self defense during closing argument without having produced any evidence to support such an argument to the jury was so serious that it prejudiced the defendant in that defense counsel failed to ensure that the defendant had a fair trial, a trial whose result would be reliable.

Absent counsel's unprofessional error, it is reasonably probable that a more favorable outcome would have occurred.

## B. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON DIRECT APPEAL

The purpose of a direct appeal process is to provide an opportunity for a defendant to have the appellate court review claimed errors which occurred during a previous trial proceeding.  To this end, a reasonable and competent appellate lawyer would present all

reasonable claims and arguments on behalf of a defendant in an effort to obtain relief. However, appellate counsel, who was also trial counsel, made no attempt to present any information regarding an ineffective assistance of trial counsel claim in the defendant's direct appeal, a reasonable claim and argument.

In this case, ineffective assistance of trial counsel is a reasonable claim and argument, given trial counsel's multiple personal conflicts with the Petitioner and his deficient performance during voir dire and throughout the duration of trial, as stated above. Appellate counsel was also the trial lawyer who provided ineffective assistance at trial, and because of this conflict of interest with the Petitioner, he did not raise this claim of ineffective assistance of trial counsel in the appellate court. In addition, appellate counsel had a personal relationship with the deceased alleged victim's father, and because of this conflict of interest with Petitioner, he did not raise this claim of ineffective assistance of counsel. The unqualified duty of loyalty to the client was compromised by the conflict of loyalty to the alleged victim.

On the direct appeal, appellate counsel's performance was deficient by his:

      a)    Failure to Present Ineffectiveness Claim for Failing to Allow Defendant to Testify at Trial;

      b)    Failure to Present Ineffectiveness Claim for Failing to Investigate and Adequately Prepare a Defense at Trial;

      c)    Failure to Present Ineffectiveness Claim for Failing to Object During State Prosecutor's Lecturing to Prospective Jurors, Use of

Brainwashing Tactics Instead of Asking Questions, and

Indoctrination of the Prospective Jurors;

d)     Failure to Present Ineffectiveness Claim for Failing to Conduct

any Voir Dire Regarding Racial Bias or Prejudice; and

e)     Failure to Present Ineffectiveness Claim for Knowingly Making

False, Inconsistent and Confusing Representations to Jury in

Opening Statement and Closing Argument

Texas appointed the same trial counsel who rendered ineffective assistance at trial to represent Petitioner on direct appeal. Further, this same trial counsel that became Petitioner's appellate counsel had a personal relationship with the alleged victim's father. Trial counsel who was now appellate counsel had multiple and personal conflicts of interest with Petitioner, and Petitioner received ineffective assistance of appellate counsel. A reasonably competent appellate lawyer, unencumbered by a conflict of interest between himself and his client, would have presented these colorable claims for appellate review. However, these grounds for appellate review were not presented by appellate counsel, and Petitioner was prejudiced because, had a reviewing court considered these grounds, it is reasonably probable that relief would have been granted.

This deficient performance was so serious that counsel was not functioning as the counsel guaranteed by the 6th and 14th Amendments if the United States Constitution. The error of not presenting the ineffective assistance of counsel claim made his performance deficient. Trial counsel, by becoming appellate counsel, sought to breach

with impunity principles requiring ethical advocacy, and bypass the scrutiny that an objective, different lawyer would view trial counsel's conduct, measured by Constitutional ineffective assistance standards, without any self-motivated interest in suppressing the ineffective assistance of trial counsel claim or issue. In addition, trial counsel, by having a personal relationship with the alleged victim's father had an unqualified duty of loyalty to the client that was compromised by the conflict of loyalty to the alleged victim.

This deficient performance, of not presenting the ineffective assistance of trial counsel claim was so serious that it prejudiced the defendant in that he could not receive fair and full consideration of his appeal, an appeal whose result would be reliable.

Absent counsel's unprofessional error, it is reasonably probable that a more favorable outcome would have resulted.

## C. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON STATE PETITION FOR WRIT OF HABEAS CORPUS

### 1. Arguing Trial Strategy in the State Writ

A Petitioner is guaranteed the right to fair hearing and review of any Petition for Writ of Habeas Corpus. To this end, a reasonable and competent appellate lawyer would have argued Constitutional or federally recognized claims for relief. In this case, state appointed appellate counsel on the state Application for Post-Conviction Writ of Habeas Corpus, Terry McDonald, hereinafter referred to as "McDonald," argued that trial counsel engaged in ineffective "trial strategy." There are no reported United States Supreme Court cases that hold that mere "trial strategy" is a basis for an ineffective

assistance of counsel claim.  In fact, the high court says the opposite, and holds that the courts give "great deference" to a lawyer when it comes to trial strategy.  Further, in a case with facts such as the instant case, where there is only one plausible defense, there can be no "trial strategy," as used here.

Defense counsel's deficient performance, by arguing ineffective assistance due to trial strategy, was so serious that defense counsel was not functioning as the counsel guaranteed a criminal defendant by the 6th and 14th Amendments to the United States Constitution.

The deficient performance of arguing ineffective assistance due to trial strategy prejudiced the defense in that defense counsel failed to ensure that the defendant had fair appellate review, a review whose result would be reliable.  This deficient performance resulted in the denial of Petitioner's right to fair appellate review of his writ.

Absent counsel's unprofessional error, it is reasonably probable that that a more favorable outcome would have resulted.

### 2. Failure to Produce Any Evidence at the Evidentiary Hearing

A Petitioner is guaranteed the right to fair hearing and review of any Petition for Writ of Habeas Corpus.  To this end, a reasonable and competent appellate lawyer would have presented evidence at a live evidentiary hearing regarding his/her previously filed writ.   In this case, appellate counsel did not produce ANY evidence to support Petitioner's claims in his habeas petition, when he was given the opportunity to do so at the February 9, 2009 live evidentiary hearing, which he requested..  In fact, McDonald

stated himself, in open court on February 9, 2009, that on his application for a writ that he would not "introduce any other evidence other than what is already in the record and contained in the application for writ of habeas corpus." On that date, McDonald did not do anything consistent with representing Preyor relative to his habeas application filed by McDonald on November 30, 2007.

The court confirmed this in the October 29, 2009 Findings of Fact and Conclusions of Law by stating that "Preyor (McDonald) presented no testimony or other evidence to support his allegations in his application for his writ of habeas corpus."

Defense counsel's deficient performance, by failing to produce any evidence at the evidentiary hearing, was so serious that defense counsel was not functioning as the counsel guaranteed a criminal defendant by the 6th and 14th Amendment to the United States Constitution.

The deficient performance of not producing any evidence at the evidentiary hearing prejudiced the defense in that defense counsel failed to ensure that the defendant had fair appellate review. This deficient performance resulted in the denial of Petitioner's right to fair appellate review of his writ, a review whose result would be reliable.

Absent counsel's unprofessional error, it is reasonably probable that that a more favorable outcome would have resulted.

### 3. Abandoning Client by Failing to Prepare a Proposed Findings of Fact and Conclusions of Law as Ordered By the Court

A Petitioner is guaranteed the right to fair hearing and review of any Petition for Writ of Habeas Corpus.  To this end, any reasonable and competent appellate lawyer would have prepared and file a Proposed Findings of Fact and Conclusions of Law, as ordered by the court.  It therefore follows that, it is certain that any reasonable and competent appellate lawyer would FOLLOW A COURT ORDER to file any document, here specifically, a Proposed Findings of Fact and Conclusions of Law.  In this case, appellate counsel did not.

McDonald stated himself, in open court that on his application for a writ that he would not "introduce any other evidence other than what is already in the record and contained in the application for writ of habeas corpus."

At the same hearing, the court indicated in open court that the Texas Court of Criminal Appeals had not yet adopted Estelle's Subsequent Petition for Habeas Corpus, and as a result, that McDonald needed to file a Proposed Findings of Fact and Conclusions of Law.  He did not.  The acts of omission at the evidentiary hearing are strong, uncontradicted, documented evidence on the record that McDonald was abandoning his client, Petitioner.

After that date, McDonald did not do anything consistent with representing Petitioner relative to his habeas application filed by McDonald on November 30, 2007. He DID NOT COMPLY with the court's order to file such pleading.

The court confirmed this in the October 29, 2009 Findings of Fact and Conclusions of Law by indicating that Texas timely filed its Proposed Findings of Fact and Conclusions of Law. However, Applicant's counsel, McDonald had failed to do the same. The record is crystal clear that McDonald abandoned his client and did nothing by way of representing the interests of Petitioner subsequent to February 9, 2009.

Defense counsel's deficient performance, by failing to prepare a Proposed Findings of Fact and Conclusions of Law as ordered by the court was so serious that defense counsel was not functioning as the counsel guaranteed a criminal defendant by the 6th and 14th Amendments to the United States Constitution.

The deficient performance of failing to prepare a Proposed Findings of Fact and Conclusions of Law as ordered by the court prejudiced the defense in that defense counsel failed to ensure that the defendant had fair appellate review. This deficient performance resulted in the denial of Petitioner's right to fair appellate review of his habeas petition, a review whose result would be reliable.

Absent counsel's unprofessional error, it is reasonably probable that a more favorable outcome would have resulted.

### 4. Abandoning Client by Failing to Make a Motion for Appointment of Himself or Other Counsel for Petitioner's Federal Habeas Review

A Petitioner is guaranteed the right to fair hearing and review of any Petition for Writ of Habeas Corpus. To this end, any reasonable and competent appellate lawyer would not abandon his client or withdraw from representing his client without prior court approval. A reasonable and competent appellate lawyer would comply with the Texas

Code of Criminal Procedure to prevent the jeopardizing of a petitioner's right to habeas review. In this case, appellate counsel did not make a motion to be appointed as counsel in federal habeas review, nor did he move for someone else to be appointed as counsel in federal habeas review. Counsel is not allowed to abandon his client or withdraw until the court is satisfied that he discharged his duty to the court and to his client. Texas state codes direct an appointed attorney to move for appointment as counsel for federal habeas review, or move for other counsel to be appointed under 21 U.S.C. 848, or equivalent provisions.

McDonald stated himself, in open court that on his application for a writ that he would not "introduce any other evidence other than what is already in the record and contained in the application for writ of habeas corpus." The acts of omission at the evidentiary hearing are strong, unimpeachable, documented evidence on the record that McDonald was abandoning his client.

After that date, McDonald did not do anything consistent with representing Preyor relative to his habeas application filed by McDonald on November 30, 2007. The record is crystal clear that McDonald abandoned his client and did nothing by way of representing the interests of Petitioner subsequent to February 9, 2009.

Further, at no time did McDonald make any formal, or oral, motion to withdraw or be relieved as appellate counsel, or for the court to appoint other appellate counsel, or for the court to appoint or substitute Estelle as attorney of record. He made no formal, or

oral, motion to either replace his petition with that of Estelle's or to supplement his Application with the arguable federal claims of error asserted in Estelle's petition.

Defense counsel's deficient performance, by failing to make a motion for appointment of himself or other counsel for petitioner's federal habeas review was so serious that defense counsel was not functioning as the counsel guaranteed a criminal defendant by the 6th and 14th Amendments to the United States Constitution.

The deficient performance of failing to make a motion for appointment of himself or other counsel for petitioner's federal habeas review prejudiced the defense in that defense counsel failed to ensure that the defendant had fair appellate review, a review whose result would be reliable.  This deficient performance resulted in the denial of Petitioner's right to fair appellate review of his federal habeas petition.

Absent counsel's unprofessional error, it is reasonably probable that that a more favorable outcome would have resulted.

## VII.

Petitioner herein incorporates by reference the accompanying Memorandum of Points and Authorities attached hereto.

The conflicts of interest of trial counsel and/or appellate counsel alone should be sufficient to entitled Petitioner to the relief sought.

Petitioner's claims in this Petition will be based on this Petition, the accompanying points and authorities, all records, documents and pleadings on file, and any further material to be developed at any future hearing that may be ordered.

Petitioner hereby requests that this Court take judicial notice of the records on appeal lodged in Case Numbers AP-75119, AP-75119-2, 2004-CR-3602 W1, 2004-CR-3602 W2, and 2004-CR-3602-W3. Reproducing the record in conjunction with use in this Petition, would incur unnecessary expenses.

WHEREFORE, Petitioner respectfully requests that this Court:

1.   Order Respondent to show cause as to why Petitioner is not entitled to the relief sought;

2.   After full consideration of the issues raised by this petition, grant the petition;

3.   Vacate the March 14, 2005 judgment of conviction of the Superior Court, 290th Judicial District, Bexar County, San Antonio, Texas, in Cause 2004-CR-3602;

4.   and grant such other and further relief as may seem just and proper under the circumstances.

Dated:   December 10, 2010

## MEMORANDUM OF POINTS AND AUTHORITIES

1.      Prejudice is presumed when counsel is burdened with an actual conflict of interest. Cyler v Sullivan, (1980) 446 US 335.

2.      The accused has the ultimate authority to make fundamental decisions regarding whether to testify in his own behalf. Jones v. Barnes, (1983) 463 US 745.

3.      A criminal defendant has a right to effective assistance of appellate counsel Evitt v. Lucey, (1984) 469 US 387.

4.      Aldridge v. U.S., (1931) 283 US 308; Andrew Hill v. State, (1995) 661 A2d 1164.

     a. Trial counsel's silence or hand-in-pocket approach and complete failure to inquire on voir dire on the subject regarding sensitive areas of racial bias and prejudice in a capital murder case where defendant is a black male and the alleged victim is a white female vitiated the legitimacy of the entire jury selection process. Refusal by the trial court to grant defendant's request that the court ask voir dire questions in these areas in a death penalty case would have been reversible error. Aldridge v. U.S., (1931) 283 US 308; Andrew Hill v. State, (1995) 661 A2d 1164.

     b. When defense counsel makes no such request of the trial court and failed to make such inquiry on his own during voir dire is a "dangerous distinction without a difference." It would be judicial error to refuse defense counsel's request for the court to voir dire in the areas of racial bias and prejudice in a capital murder case. It should be equally erroneous and ineffective assistance of

34

counsel not to so inquire on voir dire. The problem is the same and the result should be no different. Either way the defendant is denied a fair trial. <u>Aldridge v. U.S.</u>, (1931) 283 US 308; <u>Andrew Hill v. State</u>, (1995) 661 A2d 1164.

5.      Defendant has ultimate authority as to whether to testify. <u>ABA Model Rules of Professional Conduct</u>.

6.      <u>Strickland v. Washington</u>, (1984) 466 U.S. 668.

a. Appellate counsel as trial counsel rendered ineffective assistance of counsel at trial by not adverting to Defendant's decision to testify in his own behalf as to self defense, and thus withdrew from the trial the only plausible, critical and meritorious defense available to the defendant was something no reasonably competent defense lawyer would do under the circumstances in capital murder case.

Instead of placing before the jury self defense testimony of the defendant, appellate counsel, as trial counsel, argued to the jury without any evidentiary support from the defense that the defendant acted in self defense. By contrast, and a complete turnaround from defense counsel's opening statement to the jury, where it was suggested to that the evidence would show defendant had nothing to do with the homicide, was not present at the time, and the killer was David Pointer, an ex boyfriend of the decedent. All, which was known by trial counsel to be completely false and untrue. <u>Strickland v. Washington</u>, (1984) 466 U.S. 668.

b. During voir dire prospective jurors were told by trial counsel that the defense would mainly consist of cross-examination. Defense counsel during voir dire made no inquiries as to racial bias or prejudice and made no requests for the court to so inquire. In a capital murder case in Texas where the Defendant was a black man and the alleged victim was a white female, no competent criminal defense lawyer would have committed any of these unprofessional errors. Trial counsel's "conduct" so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result. <u>Strickland v. Washington</u>, (1984) 466 U.S. 668.

Appellate counsel, because he was also trial counsel, rendered ineffective assistance on appeal because of the obvious conflicts of interest between appellate counsel and the defendant. Appellate counsel, by reason of his self-motivated agenda and interests did not render effective assistance on appeal, would not and did not raise or present ineffective assistance of trial attorney on appeal.

Appellate counsel's conduct on appeal so undermined the proper functioning of the adversarial process that the appeal cannot be relied on as having produced a just result.

Both as trial counsel and appellate counsel, ineffective assistance was rendered, and the defendant was prejudiced thereby. Absent the unreasonable conduct and unprofessional errors of trial and appellate counsel, it is reasonably probable that more

favorable outcomes in the trial and appellate processes would have resulted.  The conduct

complained of was highly prejudicial, and resulted in a terrible miscarriage of justice.

# VERIFICATION

I, Brandy Estelle, Esq., declare as follows:  I am the Attorney for the Petitioner in the matter of Tai Chin Preyor v. Rick Thaler.  I make this Verification of the Petition for Writ of Habeas Corpus in this matter for the Petitioner, who is currently in custody at the Polunsky Unit in Livingston, Texas, who knows its contents from personal knowledge or based upon information and belief and believes them to be true.

I declare under penalty of perjury under the laws of the state of California, Texas and the United States that the foregoing is true and correct.

Executed on December 10, 2010, at Beverly Hills, California

/s/  Brandy Estelle, Esq.

## CERTIFICATE OF SERVICE

I, Brandy Estelle, Esq., am the Attorney for Tai Chin Preyor. My business address is 9595 Wilshire Blvd., Suite 900, Beverly Hills, CA 90212. I certify that a true and correct copy of this First Amended Petition for Writ Habeas Corpus and Summons in a Civil Action has been served by mail to the Office of the Texas Attorney General at 300 W. 15th St., 8th Floor, Austin, Texas 78701 on December 10, 2010.

_____

Brandy Estelle, Esq.
