## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TAI CHIN PREYOR,<br>        Petitioner, | §<br>§<br>§ | |
| v. | §<br>§ | No. 5:10-CV-00857-FB<br>*CAPITAL CASE* |
| RICK THALER,<br>Director, Texas Department<br>of Criminal Justice,<br>Correctional Institutions Division,<br>        Respondent. | §<br>§<br>§<br>§<br>§ | |

### TRAVERSE/REPLY TO RESPONDENT'S ANSWER

Petitioner Tai Chin Preyor (hereinafter referred to as "Preyor" or "Petitioner") hereby

requests an evidentiary hearing as to his subsequent habeas petition, filed by Attorney Brandy

Estelle (hereinafter referred to as "Estelle") in that it was never granted by Texas. Furthermore,

Texas never denied or dismissed the subsequent habeas petition filed by Petitioner

### INTRODUCTION

For the most part, Respondent Thaler's Answer to Tai Chin Preyor's habeas petition

confuses two (2) different habeas petitions filed by retained counsel, Attorney Brandy Estelle.

The first petition for writ of habeas corpus (Application/Petition for PostConviction Writ

of Habeas Corpus of Tai Chin Preyor, 2004CR3602-W2) filed on behalf of Petitioner Tai Chin

Preyor by retained counsel Estelle on December 1, 2008 was accepted by Texas, then dismissed

on October 28, 2009 because certain specific requirements of Texas Code of Civil Procedure,

1

Article 11.071, §5 were not set forth in that petition.  However, under Texas Code of Civil Procedure, Article 11.071, §5, subsequent habeas petitions are permitted, provided that certain standards are satisfied.  The subsequent petition (Subsequent Habeas Application Pursuant to Provisions of Texas Code of Criminal Procedure Article 11.071, Sections 2(e) &5, 2004CR3602-W3) (hereinafter referred to as "Subsequent Habeas Application") filed December 21, 2009 was accepted by Texas which apparently ordered the San Antonio District Attorney to file a responsive pleading because such a responsive pleading (State's Response to Applicant's Petition for Habeas Corpus) was served and filed on February 4, 2010.

In response thereto, on February 23, 2010, Estelle filed and served a motion to strike the responsive pleading of the district attorney (Motion to Strike State's Answer to Applicant's Subsequent Habeas Application pursuant to Provisions of Texas Code of Criminal Procedure, Article 11.071, Sections 2(e) and 5; Declaration of Attorney Brandy Estelle; Supporting Memorandum; and Proposed Order) (hereinafter referred to as "Motion to Strike).  The Motion to Strike was made on the ground that their answer was NOT in response to the allegations in the Subsequent Habeas Application.

Despite repeated efforts, including a specific written request for an evidentiary hearing, the Texas court has been unresponsive to efforts to make some decision or ruling relative to the Motion to Strike or decision, determination or order as to the Subsequent Habeas Application.  Subsequent to the filing of the Subsequent Habeas Application, Estelle traveled from Beverly Hills, California to San Antonio, Texas to make prison visit with the Petitioner and to review the physical court file on the subject subsequent petition and there was nothing in the court file relative to a final decision or determination with respect to the Subsequent Habeas Application.  The Texas court HAS NOT, AND DID NOT, make such a decision or determination regarding

the subject Subsequent Habeas Application. In view of the extended delay in responding to the obvious concerns and to avoid the risk of being time barred, Estelle filed the instant federal habeas petition (Petition for Writ of Habeas Corpus) with this Court. This Court could make a stay and abeyance order, order Texas to conduct an evidentiary hearing, and/or make a final determination with respect to the Subsequent Habeas Application. If relief is denied by the State, the matter could be returned to this Court for further proceedings. Rhines v. Weber, 544 US 269 (2005).

In an abundance of caution, at this juncture, counsel will address Respondent Thaler's Answer with Brief in Support as submitted. Not all points raised in the answer will be addressed due to the fact that most of the points raised have been sufficiently covered in the verified petition, thus issues have been joined. Only those points which require additional response will be addressed.

The major thrust of this federal habeas position is that there was a wholesale miscarriage of justice in that state appointed trial counsel, state appointed counsel on direct appeal, and state appointed habeas counsel individually and collectively failed to render effective assistance of counsel under Strickland standards. These matters will be more fully developed infra.

Texas has never cited Petitioner for abuse of the writ process, or made any specific order that Petitioner has abused the writ process. Additionally, Texas never rendered a decision or opinion that Petitioner's Subsequent Habeas Petition was dismissed or denied. These matters will be more fully covered infra.

## STATEMENT OF CASE

Some of Respondent's Statement of Facts are flawed and/or incorrectly analyzed which lead to faulty and incorrect conclusions. These matters will be set forth infra, but not necessarily

in the order of their importance.

## Opening Statement by Defense Counsel

Defense counsel knew well in advance of trial and opening statement that David Pointer was not present at the time of the homicide and had an actual alibi. Part of defense counsel's "CASE ANALYSIS" in defense counsel's file states: "David Pointer had stalked Jami in the 24 hour prior to her death and, according to Priscilla Vallejo, Jami was fearful of and injured by David Pointer. Pointer has an alibi for the time of the murder, although his alibi witness is not a great witness." A copy of that part of defense counsel's file is marked as Exhibit "A", attached hereto and incorporated herein by reference.

There should be no question that when defense counsel made his opening statement to the jury that he knew full well that David Pointer had nothing to do with the death of Tackett, wasn't present at the location at the time, and had an alibi. To suggest otherwise was both deceptive and down right dishonest. The entire defense was compromised beyond repair. Defense credibility was hopelessly lost and beyond retrieval. Under such circumstances, defense counsel was not acting as counsel guaranteed to a criminal defendant by the 6th Amendment. Counsel's error was so serious that Preyor was prejudiced to the extent that he did not receive a fair trial, a trial whose result is reliable. Defense counsel's performance was far below the Strickland standard. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Counsel's performance, in this case, so undermined the proper function of the adversarial process that it cannot be said that the trial produced a just result. Objectively speaking, it must be said that but for defense counsel's unprofessional error, there was a reasonable probability that the outcome would have been different.

4

The judgment of conviction must be vacated because Petitioner was deprived of effective

assistance of counsel in the trial court, on direct appeal and in his state habeas proceeding by his

state appointed attorneys' failure to avoid conflicts of interest and not abandon Petitioner in his

efforts to seek relief.

**Closing Argument**

At trial, Texas (prosecuting attorney from the district attorney's office) told the jury in

closing argument:

> "...on Monday, the defense said in their opening statement, David Pointer is the one who
> did this and Tai Preyor did nothing. You remember that opening statement? And just as
> equally strongly in the same tone of voice today, the Defense now says, oh wait a minute,
> that's not right, it's really self defense. Okay? So when you listen to the authoritative
> tone of voice, don't let it fool you. You heard the same one of Monday saying this
> defendant wasn't even there, didn't do anything wrong. Okay?..." (Reporter's Transcript:
> p.37, Volume ). A copy of that part of the transcript is marked as Exhibit "B", attached
> hereto and incorporated herein by reference.

Now Texas, (Respondent in the Answer to this federal habeas petition) attempts to disassociate

and disconnect from Texas' position on this issue at trial that obviously had a profound impact

on the jury verdict. Texas exposed defense counsel as being completely lacking in credibility.

Respondent attempts to covert the phantom defense of trial counsel into brilliant trial tactics or

strategy by contending that trial counsel had nothing to work with. On the contrary, self defense

was available from the very beginning, and by not averting to Preyor's request to testify in his

own defense and assert the privilege of self defense, trial counsel failed to provide the assistance

of counsel guaranteed by the 6th Amendment. Trial counsel's performance so undermined the

proper functioning of the adversarial process that Preyor was denied a fair trial, a trial whose

results are reliable. The <u>Strickland</u> standard was not met, and the result was a manifest

miscarriage of justice.

## Conflict of Interest and Prejudice

A defendant in a criminal matter is entitled, under the 6th and 14th Amendments to the United States Constitution to the effective assistance of counsel. Strickland v. Washington, 466 US 668 (1984). To provide effective assistance, counsel must provide representation equal to that which would be a reasonably competent attorney acting as a diligent, conscientious advocate." Reasonableness is measured under "prevailing professional norms" Strickland, supra, 466 US at p.688.

To prevail on a claim of ineffective assistance, Petitioner must show that his trial attorney's representation (appellate counsel's representation) fell below prevailing professional norms, and that he was prejudiced by this failure, e.g., reasonably probable that the result would have been different, but for counsel's error. Strickland, supra, 466 US at p. 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" Strickland, supra, 466 US at p 694.

A criminal defendant has a right to effective assistance of appellate counsel. Evitt v. Lucey, 469 US 387 (1984). As set forth in the instant petition, prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v. Sullivan, 446 US 335 (1980), Strickland v. Washington, 466 US 668 (1984).

In this case, there were at least three conflicts of interest. First, there was a conflict of interest in that unbeknown to Petitioner at the time of trial, defense's court-appointed defense lawyer was observed fraternizing and socializing with the stepfather of the alleged victim. Second, conflict also existed where Texas appointed trial counsel that rendered ineffective assistance, then turned around and appointed the same lawyer to represent Petitioner on appeal.

Third, state appointed habeas counsel abandoned Petitioner and refused to participate in an evidentiary hearing and prepare Proposed Findings of Fact and Conclusion of Law, as ordered by the Court. Furthermore, state appointed habeas counsel refused to make a motion to have other counsel appointed to represent Petitioner for federal habeas relief, as required by Texas law.

## Counsel's Reliance on Statement vs. Testimony of Defendant

If there is only one plausible line of defense, the court concluded that counsel must conduct "a reasonable substantial investigation" into that line of defense since there can be no strategic choice that render that investigation unnecessary. Strickland v. Washington, 466 US 668 (1984). Thus, if there is only one plausible defense, then trial tactics or strategy do not come into play because of the sole defense to be pursued. Preyor's written statement, offered by Texas at trial, was completely insufficient for defense counsel to rely on exclusively as a substitute for self defense evidence from defendant himself for numerous reasons.

1)   The statement was OFFERED BY PROSECUTION, not to aid or benefit defense.

2)   The statement was offered by Texas to bolster Texas' case that Preyor was IN FACT at the location of the homicide. The witness for Texas was not able to make positive identification of Preyor because he never got a good look at Preyor's face partially because of the darkness of night. In fact, Preyor's own statement places him at the scene of the homicide.

3)   The statement lacked DETAILS of the extensive "business" relationship between Preyor and Tackett, which started at Tackett's old address and continued to the address of the homicide. The trips to Tackett's apartments sometimes 3 to 4 times a week to buy drugs for resale on the streets of San

Antonio. Preyor's statement did not spell out or hint as to the lucrative benefits of his drug dealings with Tackett. The dealings were so lucrative that Preyor was able to buy a Rolex watch worth thousands of dollars, and to afford to drive an expensive automobile. This all speaks volumes as to complete lack of MOTIVE. Given these circumstances, Preyor would have every reason NOT to kill Tackett or to want her dead. Jury instructions as to Motive could have been powerful in Preyor's favor to raise reasonable doubt. Jury instructions as to MOTIVE states in part…"Absence of MOTIVE may tend to show the defendant is NOT guilty."

4)     The statement makes no reference to the shot gun or rifle the police claim that was found on the bumper of Preyor's automobile. Preyor could have testified that he had no knowledge whatsoever of that shot gun or rifle. The history of ownership from the manufacturer of the weapon would NOT include Preyor. Preyor's fingerprints were not on the weapon and the record does not show otherwise. Defense counsel failed to conduct a reasonable investigation of the history of the weapon to establish that the weapon had no connection to Preyor. Defense counsel failed to conduct a reasonable investigation as to the absence of Preyor's fingerprints on the weapon.

5)     Long before trial, defense counsel had discovery which was a part of defense counsel's file. This discovery included information about Noel Ramirez, a state witness who told the police the same date of the incident that he went to his vehicle which was parked next to Preyor's. Ramirez said that he got inside of his vehicle that night and saw Preyor unsuccessfully attempt to get into his

vehicle. Defense counsel was provided with pretrial discovery indicating that Ramirez had a criminal history for "unlawful carrying of a weapon." Defense counsel did NOT conduct a reasonable investigation to determine if Ramirez was connected with the weapon found by the police on Preyor's vehicle which was parked right next to Ramirez' automobile at the time of the incident. A copy of that part of defense counsel's file is marked Exhibit "C", attached hereto and incorporated herein by reference.

6) As a part of this same discovery which was a part of defense counsel's file, Jason Garza, the chief witness for the state, and only percipient witness as to what took place inside the apartment, also had a criminal history: "Convicted of burglary of habitation, second degree felony, on 2-29-2000, 207[th] District Court, Juvenile Court, New Braunfels, Comal County, Texas. SID 062223. SSAN 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." A copy of that part of defense counsel's file is marked Exhibit "D", attached hereto and incorporated herein by reference. This was valuable information defense counsel could have used to aid the jury in determining believability.

7) The statement did NOT give the jury an opportunity to observe the demeanor of Preyor in assessing believability. The demeanor of a witness while testifying is a valuable tool in the hands of the trier of fact and is an important factor to be considered by the jury as set forth in the jury instructions. The statement could NOT possibly convey the necessary and sufficient STATE OF MIND required to successfully assert the privilege of self defense.

8) Defense counsel KNEW well in advance of trial that Preyor's written statement

9

would be admitted in evidence in the state's case in chief for the jury to consider. This is true because defense counsel made a pretrial motion to suppress the written statement. The motion to suppress the written statement was denied.

9)      Finally, it is clearly obvious that the state did not offer Preyor's statement benefit the defense.

Respondent's claim that such statement was a sufficient substitute for Preyor actually testifying in front of the jury is clearly untrue. Respondent's contention that defense counsel's concern and fear of cross examination justified defense counsel's keeping Preyor off the stand is pure speculation and completely without merit.

**Scene of the Incident**

According to the Respondent, Preyor was standing in the doorway and Garza and Tackett were still in bed in one of the back bedrooms of the dwelling when Preyor busted down the front door. Tackett asked Preyor, "Box, what are you doing here?" "Box, what are you doing here?" is both an inappropriate and unreasonable inquiry of someone who just busted down your front door! A natural reasonable or appropriate inquiry would focus on the door. Besides, as admitted by Garza, Tackett was expecting Preyor to come over that night. (Respondent's Answer: p.25).

Next, both Garza and Tackett were dressed in street clothes. Neither was dressed in bed clothes. In fact, Garza testified that almost immediately after the fight started, that he ran out of the dwelling unit. He did not testify that he put on street clothes or stopped to put on shoes before immediately running outdoors. Regarding Tackett's bed attire, there was none. The police found Tackett in a large pool of blood just inside the front door area. She too was dressed in street

10

clothes, not bed clothes. The police did not find Tackett anywhere near the back bedroom.
Neighbors who testified saw Tackett lying on her back just inside the front door area dressed in
street clothes before the police arrived. Tackett was not only dressed in street clothes, but had on
her jewelry, including bracelets and earrings.

## Weather Conditions

In the early morning hours on February 26, 2004 in San Antonio, Texas, the temperature
was in the 30s. A copy of the weather report from www.almanac.com is marked as Exhibit "E",
attached hereto and incorporated herein by reference. The Court is respectfully requested to take
judicial notice of the weather report on the day and time of the incident in San Antonio Texas.
Garza would not have been outdoors in the middle of winter in San Antonio without shoes and
street clothes and the record failed to show otherwise. Preyor was wearing a heavy jacket and
gloves according to the record.

DOCUMENTARY EVIDENCE COULD HAVE BEEN PRODUCED BY DEFENSE
COUNSEL TO SHOW WHAT THE WEATHER WAS AND WHAT THE LOCAL
TEMPERATURE WAS AT THE TIME OF THE INCIDENT. DEFENSE COUNSEL COULD
HAVE REQUESTED THE TRIAL JUDGE TO TAKE JUDICIAL NOTICE OF THE
WEATHER CONDITIONS AND TEMPERATURE ON THE DATE AND TIME OF THE
INCIDENT.

## Reference to Box

The reference to Preyor as "Box" by Tackett could have been disputed by Preyor had
defense counsel called Preyor to testify in his own defense as Preyor had requested and defense
counsel had told Preyor he would be allowed to do. Additionally, Garza had testified at defense
counsel's motion to suppress Preyor's statement. At the suppression hearing, Garza did not

11

testify that Tackett has referred to Preyor as "Box." At that hearing, Garza said that he could not identify Preyor because it was so dark inside the dwelling unit at the time of the incident, and he was unable to get a good look and see who he and Tackett were fighting with to make an identification. Defense counsel could have discredited Garza with this prior testimony during cross examination before the jury. Effective cross examination would not have been to merely prove that Garza was less that truthful in general, but to corroborate Preyor's position and potential testimony that it was extremely dark inside the dwelling unit immediately after Tackett answered the door for Preyor to enter. This would have been consistent with Preyor's trial testimony, if called by defense counsel to be a witness on his own behalf, that Tackett WAS expecting Preyor to come over that night.

**Burglary**

There was no burglary. Burglary under Texas law requires an unconsented to entry or a trespassory entry. If Garza is testifying that Tackett was expecting Preyor, why would there be a trespassory entry? Next, Preyor was wearing a Rolex watch. Respondent admits that Preyor was wearing a watch at the time of the incident, but Respondent neglected to identify the watch as a Rolex. (Respondent's Answer: p.28). If defense counsel had put Preyor on the stand, Preyor could have testified that he was in fact wearing a Rolex at the time of the incident, which could have been corroborated by the arresting officer and further evidenced by Preyor's property report at the time of booking. With unimpeachable evidence that Preyor was wearing a Rolex watch at the time of the incident, it would take a lawyer of only ordinary skill to convince the jury of what they know: That individuals who commit burglaries do not do so while wearing a Rolex worth several thousand dollars. A Rolex watch is not a burglary tool.

Further, Garza further testified according to Respondent that Preyor said, "F... this"

12

immediately upon entry and jumping on the bed that he and Tackett were in. We know what the F word means but what meaning was there to "this?" It could hardly have meant, "burglary."

## Voir Dire and Racial Bias/Racial Prejudice

The United States Supreme Court has made it crystal clear that voir dire on the subject of racial bias and racial prejudice is of such importance that failure to inquire could be reversible error. Aldridge v. U.S., 283 US 308 (1931).

Respondent chooses to minimize its importance in this death penalty case. Respondent seems to suggest that this is a difficult area for defense counsel to navigate. On the contrary, the difficulty is avoiding the area entirely and hoping for the best. This approach would support doing away with voir dire altogether or resort to a simple group "question;" For example, "All potential jurors who cannot be fair and impartial, raise your hand." If no hand is raised, this is the end of voir dire and the first 12 would try the case. This would be quick, but not constitutional, and would not protect the right of a criminal to be tried by a fair and impartial jury.

To ask some basic and fundamental questions to ferret out racial bias or prejudice is not difficult. For example, "Mr. Doe have you ever had a "bad "experience with a black person? If so, could you briefly tell us about that experience? Any black people live in your neighborhood? On the same block where you live? If a black person moved next door to you, what would you do? Any black people work where you do? If you ride the bus to work, do you see any black people on the same bus? If you were riding on a bus and a black person sat next to you, would you move to another empty seat? How do you feel about interracial couples or marriages?" These types of questions and appropriate follow up questions would assist defense counsel representing a black person on trial in a death penalty case to fetter out racial bias or racial

prejudice and make an appropriate challenge for cause.  If not for a challenge for cause, they would help to assist counsel in making intelligent exercise of preemptory challenges.  Voir dire does not serve a criminal defendant well if the objective is not to insure that the defendant is tried by a fair and impartial jury guaranteed by the federal constitution.

**Cross Examination by Defense Counsel**

The office of cross examination is not merely to impeach or demonstrate that the witness being cross examined is untruthful.  Believability or credibility means much more than that.  It means demonstrating whether the witness was in a position to observe, see and hear that to which he is testifying about, and to demonstrate that the witness has the ability to adequately remember and relate to the trier of fact that which he observed or saw or heard that he is testifying to.  The same could apply to any witness.  However, here the focus is on cross examination by defense counsel.  Early on, and during voir dire, defense counsel told prospective jurors that the defense's role would mainly consist of cross examination.  A copy of that part of the transcript is marked as Exhibit "F", attached hereto and incorporated herein by reference.  There are only four defenses to murder: Alibi, insanity, defense of others and self defense.  Cross examination is not one of them.

Respondent, or Texas, would have this Court believe that in defending an individual on trial for murder and facing the death penalty with an attorney appointed by Texas to represent him, and state appointed counsel, who put on no defense whatsoever, that such defendant received the adequate assistance of counsel guaranteed by the 6th Amendment to the United States Constitution.

It was not that the defense put on by trial counsel was bad, poor or weak.  The problem is that counsel put on NO defense.

14

## CONCLUSION

For the reasons stated above, Petitioner respectfully requests this Court to find that he was deprived of the effective assistance of counsel in the trial court, and the appellate court, to grant this petition for writ of habeas corpus, and to issue its order to the Respondent to show cause why Petitioner should not be released from custody forthwith, or in the alternative, at this time to grant an evidentiary hearing to determine what further relief should be granted.

Dated: June 28, 2011                                        Respectfully submitted,


                                                    /s/ Brandy Estelle, Esq.

                                                    Brandy Estelle, Esq.
                                                    Counsel for Petitioner

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Traverse/Reply has been served electronically by CM/ECF upon counsel for Respondent on this 28th day of June, 2011:

GREG ABBOTT, Attorney General of Texas
DANIEL T. HODGE, First Assistant Attorney General
DON CLEMMER, Deputy Attorney General for Criminal Justice
EDWARD L. MARSHALL Chief, Postconviction Litigation Division
W. ERICH DRYDEN -- Attorney-in-Charge, Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
(512) 320-8132 (Fax)

this 28th day of June, 2011.

/s/ Brandy Estelle, Esq.

Brandy Estelle, Esq.
Counsel for Petitioner

16

# EXHIBIT A

- David Pointer had stalked Jami in the 24 hours prior to her death and, according to Priscilla Vallejo, Jami was fearful of and injured by David Pointer. Pointer has an alibi for the time of the murder, although his alibi witness is not a great witness.

# EXHIBIT B

1   you for your service.  We certainly know that you were drafted

2   and not volunteers.  I know that you're going to put your

3   full -- you have put your full attention and you're going to

4   continue to put your full attention into this case.  It's one

5   of the most important kinds the State can bring you with

    somebody as dangerous as this defendant.

             With that being said, I want to get back to the

8   facts a little bit, because there's been a lot of conjecture by

9   the defense, you know, really sort of holding himself as a

10  expert on a lot of different things.  And we're allowed to

11  argue things that are reasonably supported by the evidence, so

12  he can argue whatever he wants.  Okay?  What I would like you

13  to remember is that on Monday the defense said in their opening

14  statement, David Pointer is the one who did this and Tai Preyor

15  did nothing.  You remember that opening statement?  And just as

16  equally and strongly in the same tone of voice today, the

17  Defense now says, oh, wait a minute, that's not right, it's

18  really self defense.  Okay?  So, when you listen to the

19  authoritative tone of voice, don't let it fool you.  You heard

20  the same one on Monday saying that this defendant wasn't even

21  there, didn't do anything wrong.  Okay?

22           I told you on Monday in the opening statement

23  the way that the evidence would come together for you, that in

24  this case it was not just going to be testimony of witnesses;

25  it was not just going to be physical evidence; okay, that it

# EXHIBIT C

No active warrants on Noel Ramirez
5'7"     138 pounds        DOB: 2-14-1976
L&B Home Improvements, 735-1695
Street Names: Lil Dawg     and Rat
Prior Addresses:
1138 Chambers        1519 Pasadena        1721 W. Hildebrand
Grandmother: Juanita Valdez of 1519 Pasadena, SAT
Aunt: Betty Rodriquez

Criminal History of Noel Ramirez:
CC 9   Possess Marijuana less than 2 oz.    Deferred Adjudicated: term unsatisfactory.
CC 9   Evade Detention                      Probation Supervision terminated unsat.
CC 9   Unlawful carry weapon                Dismissed--insufficient evidence.

# EXHIBIT D

## BACKGROUND INFO ON JASON GARZA:

### Criminal History:

Convicted of burglary of a habitation, second degree felony, on 2-29-2000, 207th District Court, Juvenile Court, New Braunfels, Comal County, Texas. SID 062223.  SSAN 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.

# EXHIBIT E

Weather History for San Antonio, Texas

This easy-to-use **weather history tool** allows you to find weather conditions going back to 1946, accessing historical weather data for more than 1,300 stations across United States and Canada.  Are you planning a trip or an event such as a wedding? To get a sense of "typical" weather over a range of dates, see **Customized Weather History**.

**Location:**
San Antonio, TX
ZIP/Postal Code or City, State

**Month:**
Feb.
**Day:**
26

**Year:**
2004
Latest data available: Jun 24, 2011.

Search

Previous Day                                          Next Day

## SAN ANTONIO/STINSON

Temperature
Minimum Temperature
35.1 °F

Mean Temperature
46.2 °F

Maximum Temperature
64.9 °F

Pressure and Dew Point
Mean Sea Level Pressure
30.18 IN

Mean Dew Point
29.2 °F

Precipitation
Total Precipitation
0.00 IN

Rain and/or melted snow reported during the day.

Visibility
9.8 MI

Snow Depth
No data.

Last report for the day if reported more than once.

Wind Speed and Gusts
Mean Wind Speed
6.67 MPH

Maximum Sustained Wind Speed
9.90 MPH

Maximum Wind Gust
18.41 MPH

Weather data from the National Climatic Data Center Global Surface Summary of Day. Information from the NCDC may be incomplete. Not every station reports every day, and some stations never report certain values. To learn more about weather station terminology, please consult the Weather Observation Station page of the NCDC.

Previous Day                                          Next Day

Visit our sister Web site:
www.YankeeMagazine.com

©2011, Yankee Publishing, Inc., P.O. Box 520, Dublin, NH 03444, (603) 563-8111

# EXHIBIT F

George Constanza.  He was taking care of kids and old ladies and suddenly there's a fire and he yells fire and runs all over the children and pushes the lady aside.  If George is Georgeanne would explain what had happened, I have a feeling George would come out a little bit more heroic than what the picture was.  You might want to examine why witnesses say certain things.  Another thing you might want to ask yourself is:  Is that really possible for what this witness has told me to physically occur?  And that's for you and the other eleven jurors to decide.

On the defense side, we carry no burden of proof.  I can sit back there and not call a single witness.  The reality is just about every witness I will call, the prosecution will call.  So, most of my role in the case will probably be cross-examination.  But the State has the burden.  The defense does not.  And the State must prove its case.

Now, Melisa showed you those elements of the offense, time, place, this and that.  Every one of those items are called an element of the offense.  Every one of those items must be proven.  In the law, we have a standard of proof.  We've got three standards of proof within the law.  When you are in a civil law case, like a personal injury case, a construction law contract case or something, the standard of proof evidence is preponderance of the evidence.  And if you were to look at the scales of Lady Liberty, they are perfectly